1817.

Henderson
vs
Negro Tom

uses, thence East binding on said street, and fronting the said square to the beginning."

There is not any thing mentioned in the granting part of the deed but a lot of ground part of *Lunn's Lot*. These words "Beginning," &c. are a description of the lot, and designate the location of it, and shew in a plain manner where it lies. The words "*which street bounds on the South the square intended for public uses*," were inserted to render the description more certain, and identify more plainly the said lot; these words convey no right, interest or privilege in the square. The words "*binding on the said street, and fronting the said square to the beginning*," are also words of description, and are susceptible of the same answer.

The deed in this case is free from doubt. Indeed there is not the semblance of ambiguity in it; and parol evidence cannot be received to explain the deed, or to shew that any thing passed but what is mentioned in the deed. It was the plain intention of the parties, to be collected from the words of the deed, that the lot therein described should pass, and all Col. *Howard's* right and interest therein, and nothing else.

The court are of opinion, that the decree of the court of chancery be reversed, with costs to the appellant, in the court of chancery, and in this court.

DECREE REVERSED.

---

JUNE.                    HENDERSON vs. NEGRO TOM.

Where a slave had been imported into this state in 1792 by his owner, who had not complied with the provisions of the act of April 1783, ch. 23, by causing a registry, &c. to be made of such slave —*Held*, that the slave was entitled to freedom.

APPEAL from *Harford* County Court. A petition for freedom was filed by the appellee against the appellant. This cause, upon the assent of the parties, being brought before the court, for hearing and trial by the court, the petitioner proved that he was imported from the state of *New-York* into *Harford* county in this state, in the year 1792 or 1793. The defendant then proved to the court, that *Abraham Cole*, a citizen and resident of the state of *New-York*, removed from that state into *Harford county*, in the beginning of the year 1793, and brought with him from *New-York* into *Harford* county, sundry negro slaves, of which the petitioner *Tom* is one; that he continued to reside in *Harford* county from the time of his coming aforesaid, for about 15 years; that the defendant, then and ever since a resident of said county, having intermarried with the daughter of said *Cole*, received from him the petitioner as a part of the portion of his wife, and has so held him ever since; that the petitioner was born in the state of *New-York*, in the family of said *Cole*, to whom the petitioner and his mother belonged as slaves, and has lived with him in *New-York* from the time of his birth; that at the time said *Cole* brought said negro into *Harford* county, there was no naval officer in said county, but a

naval officer at the city of *Baltimore;* that one *Thomas* *Taylor* was collector of the tax at the time of the bringing said negro into said county; that in some short time after said negroes were so brought into said county, a conversation did take place about said petitioner, and the other negroes so brought into *Harford* county, the particulars or design of that conversation was not known to the witness; that in March 1793 the petitioner, and other negroes so brought into *Harford* county, were entered on the books of the county assessments of said county, as the slaves of said *Cole,* and taxed to him, and have been so taxed ever since. That the said *Taylor* has long since left *Harford* county, and whether he is still living or dead is uncertain, and if living his residence unknown; and it is unknown where are, or what has become of papers in his possession, if in being. The County Court gave judgment upon the preceding statement that the petitioner was entitled to his freedom, and that he be discharged from servitude, &c. From which judgment the defendant appealed to this court.

The cause was argued before CHASE, Ch. J. and BU-CHANAN, EARLE, JOHNSON, and MARTIN, J.

*Kell,* for the Appellant, referred to the act of April 1783, ch. 23, s. 1, and *Scott vs. Negro Ben,* 6 *Cranch* 1.

*Winder,* for the Appellee.

JUDGMENT AFFIRMED.

---

HUNT vs. EDWARDS, use of HUNTER.

*Where a promissory note was drawn by B, payable to H, and by him endorsed to C, who endorsed it to E—Held, in an action on it by E against H, that the hand-writing of C should be proved.*

*Where there was usury in the creation of a promissory note, can a bona fide holder maintain an action on it against the payee?*

*The drawer of a promissory note is a competent witness in an action on it by the holder against the payee, to prove that the note was given on a usurious consideration.*

**APPEAL** from *Baltimore* County Court. *Assumpsit* on a promissory note by the holder against the endorsor. The general issue was pleaded.

1. The plaintiff, (now appellee,) at the trial gave in evidence a promissory note, with endorsements thereon, as follows:

"$412 50. *Baltimore,* 20th October, 1810.

Sixty days after date I promise to pay Mr. *Joshua Hunt,* or order, four hundred and twelve dollars and fifty cents, value received,

*Tho. Bailey."*

Thus endorsed: "Pay *John Cretin,* or order. *Joshua Hunt."* "Pay *John Edwards,* or order. *John Cretin."* And also proved the hand-writing and endorsement of the defendant, (the appellant,) on said note, and that he had regular notice of the nonpayment thereof by the drawer. The defendant then proved, that before the making of the note; that is to say, on the 21st of August 1810, *Bailey,*

1817.

Hunt
vs
Edwards

JUNE.